MARÍA LUISA BLANES MANGUAL, Plaintiff and Appellee, v. ISAAC
FRANCISCO GONZÁLEZ MARTÍNEZ, Defendant and Appellant.

No. 8428. Argued May 8, 1942.—Decided June 16, 1942.

554

R. *Cuevas Zequeira* for appellant. *Clemente Ruiz Nazario* and *Heriberto Torres Solá* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Upon the dissolution by a decree of divorce of the conjugal partnership which existed between the appellant and the appellee, the latter brought an action in the lower court seeking the liquidation of said partnership. The appellee alleged that neither she nor the appellant brought any property to the marriage, but that subsequently they acquired some of their present properties which are partly described in the complaint, all of them belonging to the conjugal partnership save two houses, one at No. 83 Allen Street of this city and another at No. 32 Loíza Street, Santurce, which were brought by the appellee with her own money derived from gifts and inheritance from her father. The appellee requested that once the separate character of said immovables should be determined by the court an order be issued directing the preparation of the inventory, appraisal, and liquidation of the conjugal partnership, for which she sought the appointment of a commissioner in partition.

The appellant on the contrary alleged that said properties were bought with money of the conjugal partnership, and the

issue thus joined was settled by the lower court by a judgment the subject of this appeal in which as the only finding it declared that the two properties in controversy are the separate property of the appellee, with the exception of $108.94 which she testified to have borrowed from the conjugal partnership and invested in the house at 32 Loíza Street, and it imposed the costs upon the defendant and appellant.

The latter now maintains, as he did maintain in the court *a quo,* that the complaint fails to state facts sufficient to constitute a cause of action. His contention rests on the allegation that, under §600 *et seq.* of the Code of Civil Procedure (1933 ed.) and §§ 1316, 1317, 1318, and 1322 of the Civil Code (1930 ed.), no determination can be made within the action prosecuted regarding the separate or community character of the properties and that the action must be confined to the appointment of a commissioner in partition for the preparation of the inventory, appraisal, liquidation, and distribution thereof and to submit a report to the court which may approve, modify or reject the same as might be proper.

Indeed, §1316 provides that upon the dissolution of the partnership an inventory shall immediately be made. The other sections of the Civil Code cited by the appellant establish the rules for the preparation of the inventory, payment of debts of the partnership, and distribution of the net remainder of the partnership property. Lastly, §1324 provides that with respect to making the inventory, rules for the appraisal and sale of the property, and all other particulars not expressly fixed in Chap. IV, Tit. III, Book Fourth of the Civil Code which deals with the "Conjugal Partnership," application should be made of the rules established by Article V, Chap. VI, Tit. III, Book Third. This is why the appellant invokes §600 of the Code of Civil Procedure (1933 ed.) dealing with the appointment of commissioners in partition.

After the above recitals, the first question for determination is: Had the court *a quo* jurisdiction to settle the contro-

versy regarding the separate or community character of the properties claimed by the appellee, or was it bound to confine its action to the appointment of a commissioner in partition also sought by the appellee?

In his commentaries on the Law of Civil Procedure, volume 4, page 448, Manresa construes the provisions of the Spanish Law of Civil Procedure which became effective on April 1, 1881, similar to §600 *et seq.* of our Code of Civil Procedure, and says that conformable to §§466 and 467 of the Act of 1855, the appointment of a commissioner in partition used to be made after the approval of the inventory and appraisal and at the termination of any actions that may have arisen therefrom; but that "in order to avoid as much as possible the costly intervention of the court," in the Act of 1881, *supra,* the powers of the commissioner in partition were extended to cover all the testamentary proceedings, "including the inventory where this had not been done judicially until liquidating, dividing, and allotting the hereditary state among the interested parties."

Under §600 *et seq.* of our Code of Civil Procedure, where a commissioner in partition is appointed prior to the settlement of a controversy like the one before us, said commissioner would have power to settle it. However, this power does not exclude that of the court to settle the controversy in question, and, the case thus simplified to appoint then the commissioner so that he may proceed to comply with the other requisites, that is, those regarding the inventory, appraisal, and liquidation of the partnership.

If the court has jurisdiction to appoint the commissioner and ultimately—where the parties are of age and there is a disagreement—approves, modifies, or rejects his report, as the case might be, and establishes the procedure to be followed for settling the question, it is obvious that said court may do by itself that which in a proper case the partitioner would do. In our judgment, the position of the partitioner as regards the court from which he derives his appointment is

similar to that of a master in chancery in equity courts. The master, who is an assistant to the court, hears evidence, prepares his conclusions and submits his report to the court which accepts, modifies, or rejects the same; but this power of the master does not exclude that of the court to take by itself, if it deems it advisable, the same steps that it might delegate to the master.

If the lower court had jurisdiction to settle the issue raised by the pleadings, it is obvious that the complaint in the present case states facts sufficient to constitute a cause of action.

█ Let us now consider the case on its merits. Section 1307 of the Civil Code provides that all the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife, and §1299 provides that the following, among others, is the separate property of each spouse: that acquired by either of them during the marriage by lucrative title, that is to say, by gift, legacy, or descent. Therefore, the properties in controversy herein are presumed to be community property, and it devolves upon the appellee, who claims them to belong to her separate estate, to overcome such presumption by a preponderance of the evidence. Did the appellee successfully controvert said presumption? This is the second question to be determined. The documentary evidence submitted by the appellee conclusively shows that in 1926 and 1927, many years after the marriage, the appellee acquired from her father by gift, legacy, or descent, properties and cash amounting to $25,000. The evidence also shows that out of said sum she invested $2,500 in a mortgage loan upon the property located at No. 32 Loíza Street and that upon the mortgage being foreclosed the immovable was awarded to her on January 4, 1933, in satisfaction of the mortgage encumbering it, said acquisition having been embodied in a marshal's deed of that date, executed before Notary Rafael Ramírez Santibáñez, and recorded in the registry of property.

558

It appears, moreover, from the documentary evidence that the appellee, on March 12, 1930, acquired a one-half undivided interest in the property located at No. 83 Allen Street by purchase from Rosa Pérez Román for $8,500; but as the whole property was subject to a mortgage for $6,000 in favor of José La Costa, the purchaser retained the sum of $3,000 to meet the payment thereof at maturity, the notary attesting that the purchaser delivered to the vendor in his presence the balance of $5,500 of the purchase price. It further appears from the evidence that on May 7, 1930, the appellee bought the other half of the jointly owned interest in the house at 83 Allen Street of this City by purchase from Lina Pérez de Jiménez and her minor children for a total sum of $8,533.25, of which the purchaser retained $3,000 as the pro rata share in the mortgage already mentioned in favor of José La Costa secured by the condominium, such purchase having been embodied in public deeds executed before Notary Julio César González. The separate character of the properties thus acquired by the appellee was not set forth, however, either in the deeds or in the registry of property; but this fact does not affect the decision in the present case inasmuch as there is no third party that could be prejudiced, for the appellant can not be considered as such for the purpose of this controversy. The textwriters maintain that where there are third parties in interest, creditors, for example, a stronger proof is required to overcome the community property presumption referred to in §1307 of the Civil Code than where the interested parties are the spouses or their heirs. It is logical and reasonable that it should be so if we bear in mind the case with which husband and wife, by common agreement, might, to the prejudice of a third party, make appear as the separate property of either, property which lawfully belongs to the conjugal partnership. 9 Manresa, Spanish Civil Code, p. 618. Bearing this in mind, it has been frequently held that the mere statement or testimony of the spouse who might be prejudiced is not sufficient for overcoming the community

property presumption where the recording has been sought of property acquired during the marriage as the separate property of either spouse. However, where the controversy is between the husband and the wife, as is the case now, the reason for the rule disappears and the courts can not be so strict as to the sufficiency of the evidence. In this connection Manresa says:

"The question may also arise between the husband and the wife in case of the separation of property during the marriage, or between one of the spouses and the heirs of the other. In this case the circumstances are somewhat different. On the one hand, the heirs are not third parties but parties who must abide by the acts and obligations of their ancestor, as the continuers of his juridical personality. On the other hand, *each spouse is always entitled to everything which appears as having been separately brought in or acquired during the marriage.* It might happen therefore that an admission by the husband that the money with which certain properties were purchased came from his wife should constitute evidence against him or his heirs, and it might happen that, even in case of doubt, *the property might be awarded to the wife or her successors in interest in substitution of a like amount in cash or consumable goods which clearly appears to have been brought in or acquired during the marriage.*

"The French jurisprudence has settled the question in this sense, declaring that the admission by the husband binds his heirs or constitutes evidence against them, and we consider this conclusion as a sound one, in accordance with the principles regulating the matter of succession. Even legal heirs must be bound, unless they accept the inheritance under benefit of inventory, and to preserve the rights accruing to them against the ancestor by reason of their legal share, where the confession might injure or prejudice them." (Italics ours.) Op cit., pp. 618–619.

If we take into account the conduct of the parties, contemporaneous with and subsequent to the acquisition of the properties in question, which the appellee claims as belonging to the separate estate, we will be immediately convinced that the right is on her side. It appears from the record that the conjugal partnership owns several urban properties

located in this city and also personal property all of which, until the appointment of the judicial administrator, were managed by the appellant. If all the properties had been managed by the appellee the logical inference would be that the husband had delegated to the wife the right to manage them and such waiver could not be considered at all as an admission that the properties belonged separately to her. But it so happens that the appellant retained the management of all the other properties which were considered by both parties to be community property and those claimed by the wife as her separate estate have always been managed exclusively·by her. If the properties in controversy are in fact community property, why did not the husband manage them in the same way as other property belonging to the conjugal partnership? The appellant admitted in his testimony that he only intervened in the administration of the house at No. 83 Allen Street during the absence of the appellee in Spain owing to the marriage of their daughter Alicia (Tr. of Ev. 81). Further on, in referring to the acquisition of the same house the appellant testified: "My wife was the one who made the deal, because she never entrusted to me the management of her property, nor did I want it. . . of my wife's separate estate." (Tr. of Ev. 96). Then, it is unquestionable that the appellant himself admits the existence of separate property, contrary to the inference drawn from the answer to the complaint. Moreover, when the appellee was negotiating for the purchase of said house at Allen Street, the appellant did not approve of the deal, notwithstanding which the appellee made it. If the appellant had considered that the money that was to be invested in the deal belonged to the conjugal partnership, it seems logical that he should have enforced his rights as the administrator of said partnership and that the transaction would not have been made. On one occasion, while the appellee was away, the appellant had to write to the manager of the aqueduct of this city in connection with the aforesaid house and in his letter to that

officer he referred to her as the owner of the house (Tr. of Ev. 83). Lastly, when referring to the house at No. 32 Loíza Street the appellant in his testimony could not recall the number of said house, his explanation being then that it was due to the fact that he had seldom passed by there (Tr. of Ev. 88).

In our judgment, the evidence as a whole is sufficient to overcome the community property presumption and we fail to see any legal reason justifying us in disturbing the conclusion reached by the trial court. See the case of *Casiano v. Samaniego,* 30 Phil. Rep.

■ Lastly, the pronouncement of the judgment whereby costs were allowed to the appellee can not be disturbed by us either, inasmuch as ever since the amendment to §327 of the Code of Civil Procedure by Act No. 69 of May 11, 1936, (Laws of 1936, p. 352), it is mandatory for the trial court to grant costs to the successful party.

For the reasons stated the appeal must be dismissed and the judgment appealed from affirmed in every particular.

Mr. Justice Travieso did not participate herein.